Sealed

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

FILED by _____ D.C.

APR 0 7 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**CASE NO.**

SECURITIES AND EXCHANGE COMMISSION,  )
                                      )   **15-80446**
        **Plaintiff,**                )
                                      )
v.                                    )
                                      )   **CIV-COHN**
ECAREER HOLDINGS, INC., ECAREER, INC.,  )
JOSEPH J. AZZATA, DEAN A. ESPOSITO,   )
JOSEPH DEVITO, and FREDERICK J. BIRKS, )
                                      )
        **Defendants,**               )
                                      )
VIPER ASSET MANAGEMENT, LLC,          )
ESPO CONSULTING, LLC,                 )
DJC CONSULTING, LLC,                  )
J & D MARKETING, LLC,                 )
GRYPHON ASSET MANAGEMENT, LLC, and    )   MAGISTRATE JUDGE
CARLA AZZATA,                         )   SELTZER
                                      )
        **Relief Defendants.**        )
_____)

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## I.   INTRODUCTION

1.      The Commission files this emergency action to stop an ongoing fraud that has operated from at least August 2010 through the present, which defrauded more than 400 investors out of more than $11 million and continues to defraud new and existing investors. Defendants eCareer Holdings, Inc., eCareer, Inc. (collectively, "eCareer") and its CEO, Defendant Joseph J. Azzata, employed Relief Defendant Viper Asset Management, LLC to operate a boiler room, directed by three recidivists, Defendants Dean A. Esposito, Joseph DeVito and Frederick J. Birks who have, among other things, been barred from acting as brokers or

dealers. The Defendants used the boiler room to cold call investors, a number of whom are senior citizens, to invest in a fraudulent offering and sale of unregistered eCareer shares.

2.      To swindle more than $11 million from investors, Defendants eCareer Holdings, eCareer, Inc., Azzata, Esposito, DeVito and Birks (collectively "Defendants") carried out a fraudulent scheme, Defendants Esposito, DeVito and Birks violated prior Orders prohibiting them from selling a penny stock and acting as a broker or dealer, Defendants eCareer Holdings and Azzata made false filings with the Commission, the Defendants sold unregistered shares, and they made a series of material misrepresentations and omissions.

3.      First, they falsely represented that eCareer, a start-up company, would become profitable by using investors' proceeds as working capital to develop its online job staffing business. Instead of using the funds as working capital, Defendants, among other things, paid exorbitant fees to sales agents in excess of approximately 30% of the amount raised, or approximately $3.5 million. These undisclosed fees made the Defendants' claims that investors would profit from their investments false and misleading as a large percentage of investors' proceeds were being diverted from the company's working capital. Additionally, these unwarranted fees were hidden from investors as they far exceeded the much lower amounts represented to investors.

4.      Second, Azzata misappropriated at least $650,000 of investors' proceeds to pay for personal expenses such as motorsports, retail merchants, and family private school tuition. Once again, these unwarranted diversions from eCareer's working capital made the claims that investors would profit from the company's use of their investments as working capital false and misleading.

5.     Third, the Defendants falsely claimed that they were selling the restricted shares only to accredited or sophisticated investors, while in reality a number of the investors they targeted (and sold restricted shares to) were unaccredited and unsophisticated.

6.     Fourth, Esposito, DeVito and Birks offered and sold eCareer's penny stock to investors while concealing their significant disciplinary histories, which included, among other things, broker-dealer association and penny stock bars, which prohibited them from, among other things, offering and selling eCareer's penny stock.

7.     Fifth, after the company's reverse merger in 2013, in eCareer's quarterly and annual filings, eCareer and Azzata made further misrepresentations by mischaracterizing the true nature of the exorbitant fees paid to the sales agents.  eCareer's filings also falsely claim that funds raised through the unregistered offering were used for working capital purposes and that sales were only made to sophisticated or accredited investors, while also concealing Azzata's misappropriation of more than $650,000 in investor proceeds.

8.     During the Commission's investigation conducted prior to filing this Complaint, Azzata, Esposito, DeVito and Birks asserted their Fifth Amendment privilege against self-incrimination to nearly every question asked by the Commission on these issues.

9.     Through their fraudulent conduct the Defendants and Relief Defendants Viper Asset Management, LLC, Espo Consulting, LLC, DJC Consulting, J & D Marketing, LLC, Gryphon Asset Management, LLC and Carla Azzata (collectively, "Relief Defendants") received millions of dollars of investors' proceeds.  In addition, through this misconduct: (a) Defendants eCareer Holdings, eCareer, Inc., Azzata, Esposito, DeVito and Birks violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; (b) Defendant eCareer

Holdings violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder; (c) Defendants Esposito, DeVito and Birks violated Section 15(a) of the Exchange Act; and (d) Defendant Azzata: (i) violated Exchange Act Rule 13a-14, (ii) aided and abetted eCareer's violations of Section 17(a) of the Securities Act, (iii) aided and abetted eCareer's violations of Sections 10(b) and 13(a) and of the Exchange Act, and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder, (iv) aided and abetted violations of Section 15(a) of the Exchange Act by Defendants Esposito, DeVito and Birks, and (v) as a control person violated Section 20(a) of the Exchange Act for eCareer's violations of Sections 10(b) and 13(a) of the Exchange Act, and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder.   Unless restrained and enjoined, the Defendants are reasonably likely to engage in future violations of the federal securities laws.

## II.     DEFENDANTS & RELIEF DEFENDANTS

### A.     Defendants

10.     **eCareer Holdings** is a Boca Raton, Florida-based company, originally incorporated in Nevada in March 2005 as Barossa Coffee Company, Inc.  On August 30, 2012, Barossa acquired the outstanding shares of eCareer, Inc., a private entity, then Barossa changed its name to eCareer Holdings, Inc.  The merger was completed on April 11, 2013 and eCareer Holdings started filing periodic reports with the Commission.  eCareer Holdings is a penny stock company that trades on the OTCBB with the ticker symbol ECHI.  The company purports to be an online staffing business operated by Azzata.  The company almost entirely relies on private stock offerings to fund its operations.

11.     **eCareer, Inc.** is a Boca Raton, Florida corporation, incorporated in 2009 and is a wholly-owned subsidiary of eCareer Holdings.  Azzata was the Chief Executive Officer of

eCareer, Inc.  While he was CEO, eCareer, Inc. offered securities through Private Placement Memoranda that were purportedly only offered to accredited investors.

12.    **Azzata**, age 55, is the controlling shareholder, Chief Executive Officer, and Chairman of the Board of eCareer Holdings.  He was a registered representative associated with various registered broker-dealers from 1994 to 2004, including several boiler rooms.  He has been the subject of FINRA and state disciplinary actions in 2002 and 2006.  When the Commission took Azzata's testimony during its investigation, he asserted his Fifth Amendment privilege against self-incrimination to nearly all substantive questions regarding this matter.

13.    **Esposito**, age 46, was the president and managing member of Viper and a director eCareer.  eCareer's corporate filings with the State of Florida Division of Corporations disclose that Esposito served as a director of eCareer from December 2010 through at least May 2011 (the amendment removing Esposito is not dated until February 2013.)  Esposito was a registered representative associated with numerous registered broker-dealers from 1991 to 2004.  The Commission has previously filed two actions against him, *SEC v. Dean A. Esposito, et al.*, Case No. 8-80130-CIV (S.D. Fla., Feb. 7, 2008) and *In the Matter of Dean A. Esposito*, Exchange Act Release No. 63863, Administrative Proceeding File No. 3-14241 (Feb. 7, 2011).  As a result of the Commission's actions, Esposito has been permanently enjoined and barred from participating in any offering of a penny stock and from associating with any broker or dealer.  He is not registered with the Commission in any capacity.  When the Commission took Esposito's testimony during its investigation, he asserted his Fifth Amendment privilege against self-incrimination to nearly all substantive questions regarding this matter.

14.    **DeVito**, age 39, was a managing member of Viper and director of eCareer.  eCareer's corporate filings with the State of Florida Division of Corporations disclose that

DeVito served as a director of eCareer from December 2010 through at least May 2011 (the amendment removing DeVito is not dated until February 2013). DeVito was formerly associated with various registered broker-dealers. The Commission has previously filed two actions against DeVito, *SEC v. Joseph DeVito, et al.*, Case No. 8-80130-CIV (S.D. Fla., Feb. 7, 2008) and *In the Matter of Joseph DeVito*, Exchange Act Release No. 63864, Administrative Proceeding File No. 3-14242 (Feb. 7, 2011). As a result of the Commission's actions, DeVito has been enjoined and barred from participating in any offering of a penny stock (from August 2010 through February 2012) and from associating with any broker or dealer. He is not registered with the Commission in any capacity. When the Commission took DeVito's testimony during its investigation, he asserted his Fifth Amendment privilege against self-incrimination to nearly all substantive questions regarding this matter.

15.    **Birks**, age 43, was a sales agent and director of Viper and distributed a business card that described him as a director of eCareer. Birks was a registered representative associated with numerous registered broker-dealers from 1993 to 2005, including former boiler rooms. The Commission has previously filed two actions against Birks, *SEC v. Frederick J. Birks*, Case No. 8-80130-CIV (S.D. Fla., Feb. 7, 2008) and *In the Matter of Frederick J. Birks*, Exchange Act Release No. 63862, Administrative Proceeding File No. 3-14240 (Feb. 7, 2011). As a result of the Commission's actions, Birks has been permanently enjoined and barred from participating in any offering of a penny stock and from associating with any broker or dealer. He is not registered with the Commission in any capacity. When the Commission took Birk's testimony during its investigation, he asserted his Fifth Amendment privilege against self-incrimination to nearly all substantive questions regarding this matter.

**B.      Relief Defendants**

16.      <u>Viper</u> was a Florida corporation formed in 2010 with its principal place of business in Boca Raton, Florida.  Viper operated as a boiler room and its activities were directed by barred recidivists Esposito, DeVito, and Birks.  In October 2014, Esposito, Viper's president and managing member, voluntarily dissolved the entity.  Viper has never been registered with the Commission in any capacity.  Without any legitimate basis, Viper received investors' proceeds emanating from the Defendants' securities fraud.

17.      <u>Espo Consulting</u> is a Florida limited liability company formed in 2009 with its principal place of business in Boca Raton, Florida.  Esposito is its managing member.  Esposito received transaction-based compensation through Espo Consulting for sales of eCareer's stock.  Espo Consulting has never been registered with the Commission in any capacity.  Without any legitimate basis, Espo Consulting received investors' proceeds emanating from the Defendants' securities fraud.

18.      <u>J & D Marketing</u> is a Florida limited liability company formed in 2009 with its principal place of business in Boca Raton, Florida.  DeVito is its sole officer, director and managing member, and he received transaction-based compensation through J & D Marketing for sales of eCareer's stock.  J & D Marketing has never been registered with the Commission in any capacity.  Without any legitimate basis, J & D Marketing received investors' proceeds emanating from the Defendants' securities fraud.

19.      <u>DJC Consulting</u> is a Florida limited liability company formed in 2008 that had its principal place of business in Boca Raton, Florida.  Esposito and DeVito were its managing members, and it was administratively dissolved in 2009 for failure to file annual reports.  Esposito and DeVito each received transaction-based compensation through DJC Consulting for

sales of eCareer stock. DJC Consulting has never been registered with the Commission in any capacity. Without any legitimate basis, DJC Consulting received investors' proceeds emanating from the Defendants' securities fraud.

20. **Gryphon Asset Management** is a Florida limited liability company formed in 2004 with its principal place of business in Orlando, Florida. Birks is its sole officer, director and managing member. Birks received transaction-based compensation through this entity for sales of eCareer stock. Gryphon Asset Management has never been registered with the Commission in any capacity. Without any legitimate basis, Gryphon Asset Management received investors' proceeds emanating from the Defendants' securities fraud.

21. **Carla Azzata,** 46, is Azzata's wife. She received payments from eCareer but has not provided any services to it. Carla Azzata has never been registered with the Commission in any capacity. Without any legitimate basis, she received investors' proceeds emanating from the Defendants' securities fraud.

## III.   JURISDICTION AND VENUE

22. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); and Sections 21(d), 21(e), and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a).

23. This Court has personal jurisdiction over the Defendants and Relief Defendants and venue is proper in the Southern District of Florida because many of the acts and transactions constituting the violations alleged in this complaint occurred in this District. Moreover, Azzata, Carla Azzata, and Esposito reside in the Southern District of Florida and eCareer and Viper had their principal offices in this District which the individual Defendants worked from. Furthermore, during the period of the misconduct Birks resided in the District.

24.     In connection with the conduct alleged in the complaint, Defendants and Relief Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce or the mails.

## IV.   BACKGROUND OF ECAREER AND ITS RELATIONSHIP WITH VIPER

25.     Azzata founded eCareer in 2009 and serves as its CEO and director.  He also controls and has signatory power over its bank accounts and signed its corporate filings.

26.     From approximately December 2010 until their resignations, Esposito and DeVito served as directors of eCareer and principals of Viper.

27.     Prior to their association with eCareer, Azzata, Esposito, DeVito and Birks had been associated with Medical Connections, Inc., an entity that also purported to provide online staffing resources.  In 2010, the Alabama Securities Commission entered a cease-and-desist order against Medical Connections Holdings, Inc. for the sale of unregistered securities.  *In the Matter of Medical Connections Holdings, Inc., et al.*, Alabama Admin. Order No. CD-2010-0062, Cease and Desist Order, December 25, 2010.  Soon thereafter, eCareer began operating from Medical Connections' same office address in Boca Raton.

28.     Starting in approximately August 2010, eCareer engaged Viper to sell unregistered, restricted shares of its stock.  Viper and its sales agents conducted the majority of investor solicitations.  In general, after Viper and its sales agents convinced investors to invest, investors completed the sales transaction by sending their investments to eCareer for the issuance of unregistered, restricted shares.  In turn, eCareer sent funds via check or wire to Viper and its sales agents to pay sales fees.

A.    **Filings with the Commission**

29.    In 2013, after eCareer completed a reverse merger with a Nevada shell company, Barossa Coffee Company, eCareer began filing periodic reports with the Commission.  At the time of closing the reverse merger, eCareer Holdings' board of directors consisted of Azzata and one other individual and the Board appointed Azzata the company's chief executive officer.

30.    In its first annual report on Form 10-K filed after the reverse merger (for the fiscal year ending June 30, 2013), eCareer and Azzata disclosed that Azzata was the company's CEO and Chairman of the Board and had voting control over the company.  The filing further disclosed that the company had revenue of just $9,092 for the fiscal year ending in June 2013 and that it was subject to a going concern qualification.  Moreover, the 2013 Form 10-K purportedly disclosed the amount of compensation that Azzata received.  On October 4, 2013, Azzata executed the company's 2013 Form 10-K as its CEO and Chairman of the Board and certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act of 2002.

31.    In its first quarter of fiscal year 2014 report filed on Form 10-Q (for the quarter ending September 30, 2013), the company and Azzata disclosed that eCareer was selling unregistered shares.  On November 14, 2013, Azzata executed this filing as the CEO and certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act.  The first quarter 2014 Form 10-Q claimed that all sales of the unregistered shares were to sophisticated or accredited investors, no shares were sold in the form of a general solicitation, and all funds raised were used for working capital.

32.    In its second quarter of fiscal year 2014 report filed on Form 10-Q (for the quarter ending December 31, 2013), the company and Azzata made similar disclosers about eCareer selling unregistered shares.  On February 14, 2014, Azzata executed this filing as the CEO and

certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act. The second quarter 2014 Form 10-Q claimed that all sales of the unregistered shares were to sophisticated or accredited investors, no shares were sold in the form of a general solicitation, and all funds raised were used for working capital.

33.     In its third quarter of fiscal year 2014 report filed on Form 10-Q (for the quarter ending March 30, 2014), the company and Azzata made similar disclosers about eCareer's sales of unregistered shares. On May 15, 2014, Azzata executed this filing as the CEO and certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act. The third quarter 2014 Form 10-Q claimed that all sales of the unregistered shares were to sophisticated or accredited investors, no shares were sold in the form of a general solicitation, and all funds raised were used for working capital.

34.     In its 2014 annual report filed on Form 10-K (for the fiscal year ending June 30, 2014), eCareer and Azzata disclosed that Azzata was the company's CEO, Chairman of the Board, and Principal Financial Officer, and had voting control over the company. The company further disclosed that it had revenue of just $70,116 for the fiscal year ending in June 2014 and that it was subject to a going concern qualification. Moreover, the Form 2014 10-K purportedly disclosed the amount of compensation that Azzata received. On September 29, 2014, Azzata executed the company's 2014 Form 10-K as its CEO, Chairman of the Board and Principal Financial Officer and certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act.

35.     In its first quarter of fiscal year 2015 report on Form 10-Q (for the quarter ending September 30, 2014), the company and Azzata made similar disclosers about eCareer's sales of unregistered shares. On November 14, 2014, Azzata executed this filing as the CEO and certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act. The first quarter 2015

Form 10-Q claimed that all sales of the unregistered shares were to sophisticated or accredited investors, no shares were sold in the form of a general solicitation, and all funds raised were used for working capital.

36.     In its second quarter of fiscal year 2015 report filed on Form 10-Q (for the quarter ending December 31, 2014), the company and Azzata made similar disclosers about eCareer continuing to sell unregistered shares.  On February 13, 2015, Azzata executed this filing as the CEO and certified the accuracy of this filing pursuant to the Sarbanes-Oxley Act.  The second quarter Form 2015 10-Q claimed that all sales of the unregistered shares were to sophisticated or accredited investors, no shares were sold in the form of a general solicitation, and all funds raised were used for working capital.

## V.     SCHEME TO DEFRAUD ECAREER INVESTORS

37.     Azzata, on behalf of eCareer, hired Viper, Esposito, DeVito, Birks and their companies to raise capital by selling eCareer stock.  Viper's offices were located in the same Boca Raton building as eCareer.  Notably, Azzata's eCareer office was physically located within Viper's office suite, and next to Esposito, DeVito and Birks' offices.  Viper and its principals operated a phone room and hired and supervised sales agents to solicit investors to purchase unregistered shares of eCareer.

38.     Esposito, DeVito, and Birks could not participate in the offering of a penny stock or were prohibited from earning transaction-based compensation from the sale of eCareer's stock, since they had been barred from acting as a broker or dealer or participating in any offering of a penny stock.  In an attempt to get around these prohibitions and to disguise the true nature of the compensation they would receive from selling eCareer's stock, Esposito, DeVito, and Birks and their companies entered into Advisory Agreements with eCareer (many signed by

Azzata) that attempted to categorize the compensation they would receive as an advisory fee. These advisory agreements also provided for a finder's fee of 10% of the dollar amount of the securities purchased by accredited investors (plus a 3% expense allowance) if the advisor introduced to the company a prospective accredited investor. Moreover, the advisory agreements provided that Esposito, DeVito, and Birks and their companies would assist eCareer in preparing a business plan and Private Placement Memorandum ("PPM") for submission to prospective investors.

39.     However in reality, and in direct contravention of the Orders prohibiting them from once again engaging in this type of misconduct, Esposito, DeVito, Birks and their entities received transaction-based compensation or sales commissions from eCareer for the sale of its securities. Viper invoices attempt to conceal the true nature of these payments by describing the transaction-based or sales commissions as "finder's fees" for each customer of 13%, in addition to "advisory fees" and "consulting fees," together totaling a fee of about 30% of the amount raised from investors.

40.     Moreover, eCareer sold stock to non-accredited investors, so finder's fees were not available on these transactions. Furthermore, the extensive involvement of Esposito, DeVito, and Birks in these sales transactions went far beyond merely acting as finders. In reality, they solicited and sold shares to investors and acted as the primary, if not exclusive, interface between eCareer and its investors.

41.     Notably, all the individual defendants asserted their Fifth Amendment privilege when questioned about the services Viper, Esposito, DeVito or Birks provided to eCareer (including the solicitation of investors) and the fees they received.

42.     Additionally, the PPMs that Azzata issued on eCareer's behalf, and that Esposito, DeVito, and Birks helped prepare are replete with falsehoods.  Typical versions of the eCareer PPMs represented, among other things, that eCareer:  (a) may retain the services of licensed broker/dealers who eCareer will pay commissions that will not exceed 10% of the proceeds raised by the broker/dealer; (b) may use finders who eCareer will pay a fee not to exceed 10% of gross proceeds; (c) will not pay commissions to any officers or directors who sell securities; and (d) will only offer securities to accredited investors. These material representations were false since, among other reasons: (a) eCareer used unlicensed brokers and paid commissions that exceeded 10% of the amount raised from investors; (b) eCareer paid fees to finders in excessive of 10% and they did not pay legitimate finders' fees; (c) eCareer paid commissions to officers or directors who sold securities; and (d) the Defendants offered and sold securities to unaccredited investors.

**A.      The Fraudulent Offer and Sale of eCareer Stock**

43.     Viper's sales agents, including Defendants Esposito, DeVito, and Birks, as well as agents employed directly by eCareer, made cold calls to solicit potential investors, many of whom were elderly and unsophisticated and unaccredited.  Viper offered investors restricted shares of eCareer stock, at prices between $0.10 and a $1 per share, telling investors they could sell the stock for a considerable profit.  Viper sales agents told investors that eCareer would use their funds for business development, including the development of a website called "openreq.com" and that eCareer would make money selling job advertisements and job placement packages to companies in the medical field and other industries.  DeVito, Esposito and Birks also told investors that sales fees were minimal or did not discuss fees at all and did not inform investors that DeVito, Esposito and Birks were barred from the securities industry.

44.     eCareer also offered prospective investors tours of their office in Florida where Viper and eCareer company representatives, including Esposito, DeVito, Birks, and Azzata, gave investor presentations.   Several individuals invested after attending eCareer seminars in New York and New Jersey, at which Esposito, DeVito, Birks and Azzata solicited investments and directly met with prospective investors.

45.     Investors nationwide since at least August 2010, were solicited by Azzata, Esposito, DeVito and Birks.  Some investors knew Azzata from his prior affiliation with Medical Connections and expected to recoup their prior investment funds.   Many investors were unsophisticated, passive investors who relied on their sales agents (principally Esposito, DeVito and Birks) for updates on eCareer's business.  In addition, Azzata provided updates to investors.

46.     Esposito, DeVito, Birks and Azzata touted eCareer as a profitable investment that was raising investor funds to develop and grow its online medical staffing business.  DeVito also told investors that eCareer stock was a good value and would likely rise in price to $6 to $8 a share, with comparable companies trading at $12 per share.  In addition, Birks told another investor in approximately November 2012, that he was confident eCareer's stock would double within four to six months, and in approximately December 2012 he told another investor the stock would increase up to $30 a share.

47.     Esposito, DeVito, Birks and Azzata, along with other sales agents, sent news articles to investors touting eCareer's success, its internet presence and business awards.  The sales agents told investors that eCareer would use their funds for eCareer's working capital, business development, expansion and marketing its job placement services.

48.     After Viper sales agents, and other sales agents, contacted investors via cold calls or during eCareer and Azzata's in-person seminars or meetings, Azzata, Esposito, DeVito, Birks

and sales agents sent PPMs and marketing materials to potential investors (via emails, FedEx and in-person) that touted eCareer's success and its potential in the online staffing industry. Investors received eCareer PPMs and stock purchase agreements, which typically included a cover letter signed by Azzata.

**B.**     **Material Misrepresentations and Omissions to eCareer Investors**

      **1.**     **Undisclosed Exorbitant Sales Fees and Misrepresentations About the Use of Investors' Proceeds**

49.     Azzata, Esposito, DeVito and Birks made material misrepresentations and omissions to investors who they solicited to purchase eCareer stock through cold-calls, roadshows, and in-person meetings.  Among these material misrepresentations, Azzata, Esposito, DeVito and Birks falsely told investors that purchasing eCareer shares was a good investment and investor funds would be used for eCareer's business development and working capital when, in reality, eCareer paid fees of approximately 30% to its sales agents.  Azzata also materially omitted that he had misappropriated investor funds for lavish personal expenses.  Esposito, DeVito and Birks would, if they mentioned sales fees at all, falsely tell prospective investors that sales fees would be minimal or not exceed 10% of investors' funds, and they distributed multiple versions of eCareer's PPMs to investors that falsely stated fees to licensed brokers or dealers would not exceed 10% of investors' funds, when they knew that eCareer paid much higher sales fees and they knew they could not receive broker or dealer fees, since they had been prohibited from acting as a broker or dealer.

      **2.**     **eCareer Used Unregistered Brokers and Dealers, Concealed Brokers' Prior Disciplinary History, Industry and Penny Stock Bars**

50.     Esposito, DeVito and Birks had been barred from participating in penny stock offerings and from the securities industry, yet they each distributed PPMs that stated that

commissions would only be paid to licensed broker-dealers. Hence, they knew that they could not receive fees since they were not licensed.

51.     Furthermore, Esposito, DeVito and Birks solicited investors to purchase eCareer penny stock, representing they were offering the investments on behalf of eCareer, while knowing: they had prior disciplinary history, had been previously barred from association with any broker or dealer and were subject to district court orders barring them from participation in penny stock offerings. Nonetheless, they did not disclose this negative and material information to investors. Moreover, eCareer and Azzata omitted to disclose that Esposito, DeVito and Birks were barred by the Commission from association with any broker or dealer or from engaging in penny stock offerings.

### 3.     eCareer Targeted Unaccredited and Unsophisticated Investors

52.     eCareer's PPMs (and as discussed below, the company's periodic filings) also materially misrepresented that sales of restricted shares would only be made to accredited or sophisticated investors. Azzata, Esposito, DeVito and Birks offered and sold eCareer shares to at least several unaccredited and unsophisticated investors. In addition, they targeted senior citizens, especially older senior citizens, as at least 38 of the investors in the fraudulent, unregistered offering were ages 80 or older and at least 20 were over 85 years old.

### 4.     The Defendants Misappropriated Investor Proceeds

53.     Contrary to the Defendants' representations made to investors: (1) approximately $3.5 million, or 30% of investor funds was paid as sales fees, including to Viper and former eCareer directors Esposito and DeVito; and (2) Azzata and his family misappropriated approximately $650,000 of investor proceeds, including $47,000 in ATM cash withdrawals, $135,000 for motorsports related expenditures, $88,000 to Carla Azzata, $175,000 in American

Express charges by Carla Azzata, $25,000 in school tuition for Azzata's children, and over $59,000 at various retail merchants.

### 5.    Materially False Statements in eCareer's Periodic Filings

54.    eCareer and Azzata materially misrepresented key information about the company's directors, their compensation, and omitted to state material facts in its quarterly and annual filings with the Commission.

55.    In its Forms 10-K for the years ending June 30, 2013 and 2014, eCareer and Azzata failed to disclose the true nature of Azzata's compensation and that he had misappropriated more than $650,000 of investors' proceeds.  Moreover, they also misrepresented that payments to third-parties were for "finder," consultant and advisor services.  In reality, eCareer was paying Viper, Esposito, DeVito, Birks and their consulting companies for selling unregistered eCareer securities.

56.    In its Forms 10-Q made during fiscal years 2014 and 2015, eCareer and Azzata further misrepresented material information about its unregistered sales of equity securities and use of proceeds.  Those filings falsely state that: (1) funds raised were being used for working capital purposes; (2) sales were made to sophisticated or accredited investors; and (3) the company did not sell securities by any form of general solicitation or general advertising.  As further discussed above, these statements are false and misleading.

### C.    The Continuing Offer and Sale of eCareer's Stock

57.    eCareer continues to solicit investors to purchase its unregistered stock and receive investor proceeds.  For example, from March 2-16, 2015, eCareer deposited checks from 8 investors totaling $21,000 to purchase unregistered eCareer shares.  Even after Viper was dissolved, eCareer has continued to solicit and take investments from investors.

### D.   Azzata Controls eCareer Holdings and eCareer, Inc.

58.   Azzata controls eCareer Holdings through his stock ownership, his execution of the company's filings, his executive positions, and his position as Chairman of the Board.  By virtue of his control over eCareer Holdings, Azzata also controls, eCareer, Inc., which is eCareer Holdings wholly-owned subsidiary.  Azzata's control over these entities, allows him to control their general affairs and the specific policies that eCareer Holdings and eCareer, Inc. have used, and continue to use, to violate the federal securities laws.

### E.   Defendants and Relief Defendants Received Investors' Funds

59.   Without any legitimate basis, each of the Defendants and Relief Defendants received investors' proceeds emanating from the Defendants' securities fraud.

60.   From August 2010 through the present, eCareer has raised approximately $11 million from more than 400 investors who invested in eCareer's stock or warrants.

61.   From the investors' proceeds, approximately 30% or $3.5 million has been paid out in what were in reality transaction-based commissions.  A few examples: (1) more than $900,000 of investors' proceeds was paid to J & D Marketing, which is controlled by DeVito; (2) more than $880,000 of investors' proceeds was paid to Espo Consulting, which is controlled by Esposito; (3) more than $270,000 of investors' proceeds was paid to Gryphon Asset Management, which is controlled by Birks; (4) $30,000 of investors' proceeds was paid to DJC Consulting, which is controlled by Esposito and DeVito; (5) $28,000 of investors' proceeds was paid directly to Esposito; (6) $28,000 of investors' proceeds was paid directly to DeVito; (6) $8,000 of investors' proceeds was paid directly to Birks; and (7) approximately $400,000 of investors' proceeds was paid directly to Viper (Viper also paid in the aggregate from this and

other securities solicitations hundreds of thousands of dollars to Gryphon Asset Management, J & D Marketing, Espo Consulting, DJC Consulting, Birks, DeVito, and Esposito).

62.    From the investors' proceeds, at least $650,000 was misappropriated by Azzata. A few examples: (1) $88,000 of investors' proceeds was paid directly to Carla Azzata, Azzata's wife, who did not work for or provide any services for eCareer and was otherwise not entitled to receive any funds from eCareer; (2) $25,000 of investors' proceeds was paid for his children's tuition; (3) approximately $47,000 of investors' funds were dissipated through ATM withdrawals; (4) approximately $135,000 of investors' proceeds was spent on motorsports related expenditures; (5) approximately $175,000 of investors' proceeds was spent on American Express charges by Carla Azzata for personal expenses such as gym membership fees, pet food and services, retail merchants (such as Macy's, Bloomingdales, Nordstrom and Target), home goods, medical and dental services, restaurants and dining, groceries, utilities, insurance, and travel and entertainment; and (6) at least $50,000 of investors' proceeds was spent at various retail merchants and on airfare, a cruise and travel expenses.

## V.    CLAIMS FOR RELIEF

### COUNT I

### FRAUD IN VIOLATION OF
### SECTION 17(a)(1) OF THE SECURITIES ACT
#### (Against All Defendants)

63.    The Commission repeats and realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64.    Beginning no later than August 2010, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

65.     By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

### FRAUD IN VIOLATION OF SECTION 17(a)(2) OF THE SECURITIES ACT
### (Against All Defendants)

66.     The Commission repeats and realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

67.     Beginning no later than August 2010, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

68.     By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT III

### FRAUD IN VIOLATION OF SECTION 17(a)(3) OF THE SECURITIES ACT
### (Against All Defendants)

69.     The Commission repeats and realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

70.     Beginning no later than August 2010, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities engaged in transactions, practices and

courses of business which have operated as a fraud or deceit upon purchasers and prospective purchasers of such securities.

71.     By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

**COUNT IV**

**FRAUD IN VIOLATION OF SECTION 10(b) AND RULE 10b-5 OF THE EXCHANGE ACT**
**(Against All Defendants)**

72.     The Commission repeats and realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

73.     Beginning no later than August 2010, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly:  (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities.

74.     By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## COUNT V

### UNLAWFULLY OPERATING AS A BROKER-DEALER
### WITHOUT REGISTERING WITH THE COMMISSION
### IN VIOLATION OF SECTION 15(a) OF THE EXCHANGE ACT
### (Against Defendants Esposito, DeVito and Birks)

75.    The Commission repeats and realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

76.    Beginning no later than August 2010, Defendants Esposito, DeVito, and Birks, acted as broker or dealers and have made use of the mails and other means or instruments of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

77.    By reason of the foregoing, Defendants Esposito, DeVito, and Birks directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## COUNT VI

### SALES OF UNREGISTERED SECURITIES IN VIOLATION OF SECTIONS 5(a) AND
### 5(c) OF THE SECURITIES ACT
### (Against All Defendants)

78.    The Commission repeats and realleges paragraphs 1 through 62 of its Complaint as if fully set forth herein.

79.    No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offerings and transactions described in this Complaint, and no exemption from registration exists with respect to these securities and transactions.

80.     Beginning no later than August 2010, the Defendants, directly and indirectly: (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (b) carried securities or causing such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, without a registration statement having been filed or being in effect with the Commission as to such securities.

81.     By reason of the foregoing, the Defendants violated, and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT VII

### FALSE REPORTS IN VIOLATION 13(a) OF THE EXCHANGE ACT AND RULES 12b-20, 13a-1, AND 13a-13 THEREUNDER
### (SOLELY AGAINST DEFENDANT ECAREER HOLDINGS)

82.     The Commission repeats and realleges paragraphs 1 through 62 of its Complaint as if fully set forth herein.

83.     After the company's reverse merger in 2013, Defendant eCareer Holdings violated Section 13(a) and Rules 12b-20, 13a-1, and 13a-13 of the Exchange Act, failed to timely and accurately file annual and quarterly reports with the Commission regarding, among other things, its assets, liabilities, and related party descriptions and transactions; omitting information necessary to make the required information, in the light of the circumstances under which they were made, not misleading; and by filing or causing to be filed with the Commission materially false and misleading financial statements.

84.     By reason of the foregoing, Defendant eCareer Holdings violated, and unless enjoined, is reasonably likely to continue to violate Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

## COUNT VIII

### SECTION 20(a) – CONTROL PERSON LIABILITY – LIABILITY FOR VIOLATIONS BY ECAREER HOLDINGS AND ECAREER, INC. OF THE EXCHANGE ACT (SOLELY AGAINST DEFENDANT AZZATA)

85.     The Commission repeats and realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

86.     Beginning no later than August 2010, Defendant Azzata has been, directly or indirectly, a control person of eCareer Holdings and eCareer, Inc. for purposes of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

87.     After the company's reverse merger in 2013, eCareer Holdings violated Sections 10(b) and 13(a) and Rules 10b-5, 12b-20, 13a-1, and 13a-13 of the Exchange Act.

88.     Beginning no later than August 2010, eCareer, Inc. violated Section 10(b) and Rule 10b-5 of the Exchange Act.

89.     As a control person of eCareer Holdings and eCareer Inc., Defendant Azzata is jointly and severally liable with and to the same extent as eCareer Holdings and eCareer Inc. for each of their violations of the Exchange Act.

90.     By reason of the foregoing, the Defendant Azzata, directly and indirectly violated, and unless enjoined, is reasonably likely to continue to violate Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

## COUNT IX

### VIOLATIONS OF PRIOR ORDERS
#### (Against Defendants Esposito, DeVito and Birks)

91.     The Commission repeats and realleges paragraphs 1 through 62 of this complaint as if fully restated herein.

92.     On February 7, 2011, the Commission ordered Defendant Esposito to not associate with any broker or dealer. *In the Matter of Dean A. Esposito*, Exchange Act Release No. 63863, Administrative Proceeding File No. 3-14241.   Esposito remains subject to the Commission's broker or dealer bar.

93.     On February 7, 2011, the Commission ordered Defendant DeVito to not associate with any broker or dealer with the right to reapply after eighteen months.  *In the Matter of Joseph DeVito*, Exchange Act Release No. 63864, Administrative Proceeding File No. 3-14242. DeVito has not successfully reapplied, so he remains subject to the Commission's broker or dealer bar.

94.     On February 7, 2011, the Commission ordered Defendant Birks to not associate with any broker or dealer. *In the Matter of Frederick J. Birks*, Exchange Act Release No. 63862, Administrative Proceeding File No. 3-14240.  Birks remains subject to the Commission's broker or dealer bar.

95.     On August 18, 2010, final district court judgments were entered by consent against Esposito and Birks, enjoining them from future violations of Section 5 of the Securities Act and Sections 10(b) and 15(a) of the Exchange Act and Rule 10b-5 thereunder, and permanently barring them from participating in any penny stock offering.  DeVito was enjoined by final judgment on the same date from violating Section 5 of the Securities Act and Section

15(a) of the Exchange Act, and the court ordered a time-limited, 18-month penny stock bar (through February 2012).

96.     By reason of the foregoing, Defendants Esposito, DeVito and Birks have violated, and unless ordered to comply will continue to violate prior orders.  Accordingly, the Court should issue an order pursuant to Section 20(c) of the Securities Act and Section 21(e) of the Exchange Act commanding Defendants Esposito, DeVito and Birks to comply with the prior Orders.

**COUNT X**

**FALSE CERTIFICATIONS IN VIOLATION OF EXCHANGE ACT RULE 13a-14**
**(Solely Against Defendant Azzata)**

97.     The Commission repeats and realleges paragraphs 1 through 62 of this complaint as if fully restated herein.

98.     After the company's reverse merger in 2013, Defendant Azzata in violation of Rule 13a-14 of the Exchange Act, directly or indirectly, as an officer or director of an issuer, falsely certified in annual and quarterly reports that based on his knowledge, the disclosure reports did not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report.

99.     By reason of the foregoing, Defendant Azzata, directly or indirectly, violated, and unless enjoined, is reasonably likely to continue to violate Rule 13a-14 of the Exchange Act, 17 C.F.R. § 240.13a-14.

## COUNT XI

## AIDING AND ABETTING VIOLATIONS OF SECURITIES ACT SECTION 17(a)
### (Solely Against Defendant Azzata)

100.    The Commission repeats and realleges paragraphs 1 through 62 of this complaint as if fully restated herein.

101.    Beginning no later than August 2010, Defendants eCareer Holdings or eCareer, Inc., directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud; obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon purchasers and prospective purchasers of such securities.

102.    Beginning no later than August 2010, Azzata knowingly, willfully, or recklessly aided and abetted violations of Sections 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act by Defendants eCareer Holdings or eCareer, Inc.  Azzata also, directly and indirectly, had a general awareness that he was part of an overall activity that was improper or illegal and knowingly, or was extremely reckless in not knowing, and provided substantial assistance to violations of Section 17(a) of the Securities Act by Defendants eCareer Holdings and eCareer, Inc.

103.    By reason of the foregoing acts, Azzata aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet violations of Sections 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act by Defendants eCareer Holdings and eCareer, Inc.

## COUNT XII

### AIDING AND ABETTING VIOLATIONS OF 10(b), 13(a), AND 15(a) OF THE EXCHANGE ACT AND RULES THEREUNDER
#### (Solely Against Defendant Azzata)

104.    The Commission repeats and realleges paragraphs 1 through 62 of this complaint as if fully restated herein.

105.    After the company's reverse merger in 2013, eCareer Holdings violated Sections 10(b) and 13(a) and Rules 10b-5, 12b-20, 13a-1 and 13a-13 of the Exchange Act.

106.    Beginning no later than August 2010, eCareer, Inc. violated Section 10(b) and Rule 10b-5 of the Exchange Act.

107.    Beginning no later than August 2010, Defendants Esposito, DeVito, and Birks, acted as brokers or dealers and made use of the mails and other means or instruments of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

108.    Beginning no later than August 2010, Azzata knowingly, willfully, or recklessly aided and abetted violations of the Exchange Act by Defendants eCareer Holdings, eCareer, Inc., Esposito, DeVito, or Birks.  Azzata also, directly and indirectly, had a general awareness that he was part of an overall activity that was improper or illegal and knowingly, or was extremely reckless in not knowing, and provided substantial assistance to violations of the Exchange Act by Defendants eCareer Holdings, eCareer, Inc., Esposito, DeVito, and Birks.

109.    By reason of the foregoing acts, Azzata aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet violations of the Exchange Act by Defendants eCareer Holdings, eCareer, Inc., Esposito, DeVito, and Birks.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue a Temporary Restraining Order, a Preliminary Injunction and Permanent Injunction restraining and enjoining:  (a) Defendants eCareer Holdings, eCareer, Inc., Azzata, Esposito, DeVito and Birks from violating Sections 5(a), 5(c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (b) Defendant eCareer Holdings from violating Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder; (c) Defendants Esposito, DeVito and Birks from violating Section 15(a) of the Exchange Act; and (d) Defendant Azzata from: (i) violating Exchange Act Rule 13a-14, (ii) aiding and abetting eCareer's violations of Section 17(a) of the Securities Act, (iii) aiding and abetting eCareer's violations of Sections 10(b) and 13(a) of the Exchange Act, and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder, (iv) aiding and abetting Defendants Esposito, DeVito and Birks violations of Section 15(a) of the Exchange Act, and (v) violating Section 20(a) of the Exchange Act for

eCareer's violations of Sections 10(b) and 13(a) of the Exchange Act, and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder.

## III.

### Disgorgement

Issue an Order directing the Defendants and Relief Defendants to disgorge all ill-gotten profits or proceeds received from investors as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

## IV.

### Civil Money Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d).

## V.

### Penny Stock Bars

Issue an Order pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), permanently barring Defendants Azzata and DeVito from participating in any offering of a penny stock.

## VI.

### Officer and Director Bar & Bar from Voting eCareer's Stock

Issue an Order: (a) temporarily, preliminary and permanently barring Defendant Azzata from voting the shares of eCareer Holdings or eCareer, Inc. he owns or controls, directly or indirectly, and serving as an officer or director of any public company pursuant to Section 20(e)

of the Securities Act, Sections 21(d)(2) and 21(d)(5) of the Exchange Act, and Section 305(b)(5) of the Sarbanes-Oxley Act.

## VII.

### Accountings

Issue an Order requiring sworn accountings by the Defendants and Relief Defendants.

## VIII.

### Orders

Issue an order pursuant to Section 20(c) of the Securities act and Section 21(e) of the Exchange Act commanding Esposito, DeVito and Birks to comply with the prior Orders.

## IX.

### Asset Freeze

Issue an Order freezing the assets of the Defendants and Relief Defendants until further Order of the Court.

## X.

### Records Preservation and Expedited Discovery

Issue an Order requiring the Defendants and Relief Defendants to preserve any records related to the subject matter of this lawsuit that are in their custody, possession or subject to their control, and to respond to discovery on an expedited basis.

## XI.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## XII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  April 7, 2015

Respectfully submitted,

By: _____

Christopher E. Martin
Senior Trial Counsel
Arizona Bar No. 018486
Direct Dial:  (305) 982-6386
E-mail:  martinc@sec.gov

Linda Schmidt
Senior Counsel
Florida Bar No. 0156337
Direct Dial:  (305) 982-6315
E-mail:  schmidtls@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154